## PEOPLE *v.* SMITH.

(*Supreme Court, General Term, First Department.*   December 2, 1889.)

CRIMINAL LAW—EVIDENCE—IDENTIFICATION.

Defendant was arrested for robbing complainant, the arrest being made on a description given by complainant.   On being confronted with defendant, complainant declared that he was the man, but afterwards said that he had a doubt.   After two days spent with a detective, looking for a man whose appearance would agree with his recollection of the man who robbed him, complainant again saw defendant, and then stated that after calm reflection he thought defendant was the man who had robbed him.   *Held,* that the identification was not sufficient.

Appeal from court of general sessions, New York county.

Argued before VAN BRUNT, P. J., and DANIELS and BARRETT, JJ.

*Purdy & McLaughlin,* for appellant.   *John R. Fellows,* Dist. Atty., *(McKenzie Semple,* Asst. Dist. Atty., of counsel,) for the People.

BARRETT, J.   The sole question in this case was one of identification, and the complainant, Matthews, was the only witness on that head.   He was

[1]Pen. Code N. Y. §§ 228–230.

robbed at about the corner of South Fifth avenue and Bleecker street by three colored men, whom he had never seen before. Two (Dorsey and Crumes) were arrested, and confessed their guilt; the third escaped. The appellant, Smith, was arrested (as the guilty third) the same afternoon by Officer O'Hara, and taken to the station-house. O'Hara testified that he made the arrest from a description of the third robber received from the complainant, and from the fact that he had himself observed Smith in company with Dorsey and Crumes at about the time of the robbery. Matthews was at once confronted with Smith in the station-house, and declared that he "was the man." The police captain then said that the charge was a serious one, and that Matthews should be very careful about the identification. Matthews then said: "Well, I have got a doubt. I think he was the tallest of the three. I have got a doubt of this matter, and I will give the prisoner the benefit of the doubt." Another witness (Detective Sullivan) testified that Matthews looked at Smith in the station-house very closely,—"went all around him,"—and then said: "I think this is the man," repeating that expression two or three times. Matthews himself testified that he then had a doubt, but that such doubt was regarding the prisoner's height. After the expression of doubt in the station-house, Smith was held for carrying a concealed weapon, and Matthews made an appointment with Detective Sullivan to go about with him at night looking for the third robber; "looking," as Sullivan put it, "for a tall man, six feet in height, with a grey overcoat and a light complexion,—a sharp-featured man, with a long nose." This was Matthews' description of the third man. Sullivan and Matthews spent two nights looking for a person of this description. Once they met a man who Matthews said was not unlike the third robber. This is Sullivan's testimony on that head: "Matthews turns around and says: ' That is not unlike the man; that looks like the man, and his coat is something similar.' I says to him: ' That man! I don't think he would do anything of the kind, for I know him.' He says: ' I am not saying he is, but he is not unlike the man.'" Now, all this was going on while Smith was still confined on the sole charge of carrying concealed weapons. It was only by making this charge that the police felt justified in holding him, without clear and complete identification. Matthews' doubts apparently continued for two days after the arrest, and were only solved when he subsequently saw Smith in the police court in company with Dorsey and Crumes. Then Matthews sent for Sullivan, and said to him: "Sullivan, after calm reflection, and come to think over the matter, I think that man that had the weapon—the concealed weapon —is the third man." That this statement was made to Sullivan is not denied, and yet Matthews now declares that the light came to him not so much from calm reflection and thinking the matter over, as from seeing the three prisoners together in the police court. Matthews never saw Smith in his life prior to the robbery; and then saw him, if at all, for but a moment, and while laboring under great excitement. Within a few hours he examined Smith closely, under circumstances calculated to call forth the best powers of mind and memory, and he then declared that he was in doubt, and would give Smith the benefit of that doubt. This doubt continued for two days, and was sufficiently active to keep Matthews spending his nights looking for the guilty man. Finally his doubts were suddenly cleared up, but whether by observation or reflection seems to be still in doubt. It would be entirely unsafe to permit a conviction upon such testimony. After such prolonged obscurity of vision, upon so crucial a matter, a man's liberty should not be sacrificed upon a sudden flash of unsupported and uncorroborated recognition. The facts from which corroboration was claimed were altogether too slight. They have already been adverted to, viz., the circumstances which induced the officer to make the arrest. Smith's appearance and manner could scarcely have been impressed upon Matthews, in those few seconds, sufficiently to enable him to furnish the officer with special idiosyncracies and distinguishing character-

istics of the defendant. Those that he did furnish were common to very many of the prisoner's race and walk in life. Nor was the circumstance of the officer's seeing Smith with Dorsey and Crumes not long before the robbery sufficient to counterbalance Matthews' doubts. In considering this crucial branch of the case, I have given but little weight to the testimony of Smith, Dorsey, and Crumes. The two latter were entirely unworthy of belief, not merely because of their character, but because of their contradictory statements, and the improbability of their stories. Indeed, my only doubt, in reviewing this record, has sprung from the prisoner's attempt to throw the crime upon another Smith.

The defendant, however, cannot be convicted because of the mere weakness of this defense. The question of identification still remains, and must be determined upon the case made by the prosecution, supplemented by any testimony emanating from the defendant really indicating a consciousness of guilt. There was enough in the case upon the part of the defendant to neutralize the consciousness of guilt which might otherwise, perhaps, be inferred from the endeavor to fasten the crime upon another Smith; for it appeared, by testimony which might be credited, that the prisoner, prior to his arrest, had been informed that one Frank Smith was the guilty person. At all events, the prisoner's assertion on that head was not, under all the circumstances, a plainly false statement, put forward to hide his own guilt, and consequently cannot be said to have supplemented the weakness of the complainant's identification. The charge of the learned recorder did not touch upon the special features of the testimony to which I have adverted. He told the jury that he did not understand that there was any failure on the part of the complainant in the police station to identify the prisoner as one of those who were engaged in the robbery. He also told them that the complainant was there cautioned by the captain of police to be exceedingly careful about the identification, and that Matthews then made an examination of the defendant, and said that he was the man. This was an accurate statement of part of what transpired in the station-house, but it was incomplete, in that it omitted the expression of doubt which I have previously quoted. As a natural result of this doubtless unintentional omission the learned recorder substantially left the case to the jury upon the conflict of testimony between the complainant and the defendants in this indictment. The result could scarcely have been other than a conviction. The court should, in my judgment, (if the case were to go to the jury at all,) have submitted the question of identity on the case made by the prosecution standing alone, except as, possibly, aided by the prisoner's conduct and testimony tending to show consciousness of guilt. That was the substantial question, and I cannot think that if it had been thus presented to the jury, with a complete statement, not only of Matthews' present conviction, but of his past doubts, (as expressed in words and action,) the verdict would not have been what it was. Upon the whole I am satisfied that this judgment should be reversed, and a new trial ordered. All concur.